The UNIVERSITY OF TEXAS SOUTH-WESTERN MEDICAL CENTER AT DALLAS, Appellant,

v.

Larry M. GENTILELLO, M.D., Appellee.

No. 05–07–00845–CV.

Court of Appeals of Texas, Dallas.

July 21, 2010.

Michael W. Youtt, Jeremiah J. Anderson, William R. Burns, King & Spalding LLP, Houston, TX, for Appellant.

Charla G. Aldous, Aldous Law Firm, R. Brent Cooper, Diana L. Faust, Cooper & Scully, P.C., Dallas, TX, for Appellee.

Before Justices MORRIS and O'NEILL.[1]

## OPINION ON REMAND

Opinion By Justice O'NEILL.

This is an interlocutory appeal from the trial court's denial of the University of Texas Southwestern Medical Center at Dallas's plea to the jurisdiction based on sovereign immunity. On original submission, we affirmed the trial court's judgment. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 260 S.W.3d 221 (Tex. App.-Dallas 2008). We concluded he trial court properly denied UT Southwestern's plea to the jurisdiction because Gentilello's petition adequately alleged a violation of the Whistleblower Act. In reaching this conclusion, we determined Gentilello merely had to allege the Act was violated and that whether the specific factual allegations actually constituted a violation of the Act were not a proper inquiry on a plea to the jurisdiction. After our opinion issued,

---

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, was on the panel at the time of original submission of this case. Justice Whittington has since retired. This case will be decided by the two remaining panel members. *See* Tex.R.App. P. 41.1(b).

the Supreme Court issued *State v. Lueck* holding that the underlying elements of a Whistleblower claim had to be considered to ascertain whether a violation has actually been alleged. *State v. Lueck*, 290 S.W.3d 876, 881 (2009). The Supreme Court later reversed our opinion in this case for reconsideration in light of *Lueck*. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 300 S.W.3d 753 (2009) (per curiam). The sole issue on remand is whether Gentilello has alleged that he reported a violation of law to an "appropriate law enforcement authority."

We will borrow from the factual recitation in our original opinion. Gentilello is a tenured professor of medicine at UT Southwestern. When initially employed by UT Southwestern, Gentilello was the Chair of the Division of Burn, Trauma and Critical Care and held the Distinguished C. James Carrico, M.D. Chair in Trauma. Gentilello alleges that during his employment, he discovered that Parkland residents were treating and performing surgical procedures on patients without the supervision of an attending physician. Gentilello believed this practice constituted a violation of Medicare and Medicaid rules and regulations. Gentilello reported the violations to Dr. Robert V. Rege, the person at UT Southwestern who set the policies regarding the presence of attending physicians and who had the power to internally investigate Medicare and Medicaid violations. After making his report to Rege, Rege stripped Gentilello of his chair positions.

Gentilello sued UT Southwestern for violations of the Texas Whistleblower Act. He alleged that he had a good faith belief that Medicare and Medicaid violations were occurring at UT Southwestern and he reported these violations to the person that he believed in good faith had the authority to "investigate and correct" such practices. According to Gentilello, his reporting resulted in an adverse personnel action when he was stripped of his chair positions.

UT Southwestern filed a plea to the jurisdiction alleging Gentilello's claims are barred by sovereign immunity. UT Southwestern acknowledged the Whistleblower Act waives immunity from suit for claims brought under the Act, but it asserted Gentilello did not allege a violation of that Act. In particular, it maintained Gentilello failed to allege that he reported a violation of law to an "appropriate law enforcement authority." According to UT Southwestern, Gentilello had to specifically plead that Rege had been delegated "federal enforcement authority" by the Medicare and Medicaid statutes and regulations or that Rege had some sort of criminal jurisdiction.

Government immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Arnold v. UT Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 467 (Tex.App.-Dallas 2009, no pet.). Whether the trial court has subject-matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *Dallas Area Rapid Transit v. Carr*, 309 S.W.3d 174, 176 (Tex.App.-Dallas 2010, pet. filed). A plaintiff has the burden to allege facts affirmatively demonstrating the trial court has subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In determining whether a plaintiff has done so, we construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226–27; *Carr*, 309 S.W.3d at 176. In determining a plea to the jurisdiction, we can also consider evidence, and must do so when necessary to resolve the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue*, 34

S.W.3d 547, 554 (Tex.2000); *Arnold,* 279 S.W.3d at 467. If evidence presented at a plea to the jurisdiction negates the existence of jurisdictional facts as a matter of law, the plea to the jurisdiction should be granted. *City of Waco v. Lopez,* 259 S.W.3d 147, 150 (Tex.2008). However, if a fact issue is presented, the trial court should deny the plea. *Id.*

■ The Whistleblower Act contains an express waiver of immunity from suit. Specifically, a public employee who "alleges" a violation of the Act may sue the employing state or local government entity for the relief provided by the Act. TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004); *see Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 n. 6 (Tex.2003). In determining whether a violation has been alleged, we consider whether the factual allegations would actually constitute a violation of the Act. *Lueck,* 290 S.W.3d at 876. However, a plaintiff need not prove its claim to satisfy the jurisdictional hurdle and the burden of proof with respect to the jurisdictional facts does not involve a significant inquiry into the substance of the claims. *Id.* at 884.

Under the Act, a state or local governmental entity may not take adverse personnel action against a public employee who in good faith reports a violation of law by the employing governmental entity to "an appropriate law enforcement authority." *See* TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004). "Appropriate law enforcement authority" is a defined term in the Act. A report is made to an appropriate law enforcement authority if the authority is a part of a governmental entity that the employee in good faith believes is authorized to (1) regulate under or enforce the law alleged to be violated in the report or (2) investigate or prosecute a violation of

criminal law. TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004).

■ In his petition, Gentilello alleged he observed illegal practices at UT Southwestern regarding trauma residents and the care of patients. Specifically, trauma residents were treating patients and performing surgery without the supervision of attending physicians. He asserted these practices were having an adverse effect upon the care of indigent patients at UT Southwestern. He reported the violations to Rege, "[t]he person at UT Southwestern who set the policies regarding the presence of attending physicians during surgery and who had the power to investigate these illegal activities and bring about an end to them." He alleged he was demoted because of his good faith report.

In its plea to the jurisdiction, UT Southwestern asserted Gentilello failed to allege a claim under the Whistleblower Act because he did not plead he had a good faith belief that Rege was an "appropriate law enforcement authority."[2] On appeal, UT Southwestern asserts Gentilello's petition, and the proof presented at the hearing on the plea to the jurisdiction, affirmatively negated any such good faith belief because Rege was Gentilello's internal supervisor. According to UT Southwestern, unless the employing agency is itself a law enforcement agency, a supervisor can never be an appropriate law enforcement authority as a matter of law. It relies on *Department of Transportation v. Needham,* 82 S.W.3d 314, 317 (Tex.2002) and *State v. Lueck* to support this contention. We do not read either case so broadly.

In *Needham,* the plaintiff, a Texas Department of Transportation (TxDOT) employee, reported to his supervisor that a coworker had committed a driving while intoxicated offense while driving a TxDOT

---

**2.** UT Southwestern did not contest that Gentilello reported a violation of law.

vehicle. The plaintiff was subsequently demoted. He sued under the Whistleblower Act. Following a jury verdict in the plaintiff's favor, TxDOT appealed asserting Needham did not report to an appropriate law enforcement authority because TxDOT was "not an entity charged with regulating under, enforcing, investigating or prosecuting the state's criminal laws, including those that penalize driving while intoxicated." *Needham,* 82 S.W.3d at 318. The court of appeals disagreed concluding TxDOT was an appropriate law enforcement authority because it could discipline its employees for legal violations under its progressive disciplinary action policy. *Id.* at 319. The Supreme Court disagreed holding that an employer's general authority to conduct an internal investigation and discipline its employees is not alone sufficient to show that the employer is an "appropriate law enforcement authority." *See Needham,* 82 S.W.3d at 320–21. Otherwise, the Court explained, all governmental employers with a disciplinary policy for handling illegal conduct would be appropriate law enforcement authorities for any violations of law. *See id.* However, contrary to UT Southwestern's suggestion, *Needham* does not hold a report to a supervisor can never constitute a good faith report. Rather, *Needham* explained, in determining whether an authority was an appropriate law enforcement authority, we look to whether the authority could regulate under or enforce the particular law alleged to be violated. Because TxDOT did not have authority to regulate under or enforce DWI laws or to investigate or prosecute such criminal offenses, TxDOT was not an appropriate law enforcement authority. *Id.* at 320. Likewise, Needham did not reasonably believe TxDOT had authority to regulate under, enforce, investigate or prosecute such criminal laws. *Id.* at 321. Thus, it reversed the jury's verdict and rendered judgment for TxDOT

In *Lueck,* the plaintiff, another TxDOT employee, reported a possible regulatory violation to his supervisor. The Supreme Court concluded Lueck did not report a violation of law and additionally that the supervisor, in that case, was not an appropriate law enforcement authority. *Lueck,* 290 S.W.3d at 885–886. It explained that Lueck's supervisor, as the head of a division within TxDOT, could not regulate nor enforce the law that Lueck alleged had been violated. *Id.* at 885. In further concluding that Lueck did not have a good faith belief that his supervisor was an appropriate law enforcement authority, the Supreme Court reasoned that Lueck himself "knew [his supervisor] was not the proper authority *within* TxDOT to *regulate* the reported violations because he recommended [his supervisor] have his e-mail "readily available" when discussing [the alleged violation] with other TxDOT divisions." *Id.* at 886 (emphasis added). Thus, if anything, *Lueck* seems to recognize that in some cases a plaintiff may reasonably believe a report to an appropriate law enforcement authority may be made internally.

Having considered the holdings in *Needham* and *Lueck,* we cannot conclude either requires dismissal of Gentilello's suit. Instead, we agree with the Houston First Court of appeals that "[t]he fact that an employee makes a report of a violation of law to his employer or superior regarding the work being performed by the government entity that employs him does not automatically render the Whistleblower Act inapplicable." *See Tex. Dep't of Human Servs. v. Okoli,* 317 S.W.3d 800, 810–11 (Tex.App.-Houston [1st. Dist] 2010, no pet. h.). Thus, the question that remains is whether a fact issue exists on whether Gentilello had a good faith belief that Rege

was authorized to regulate under or enforce the Medicare and Medicaid violations reported. TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004).

In making this determination, we turn to the allegations in Gentilello's petition. UT Southwestern did not specially except to the petition, and we must therefore construe the petition liberally. While Gentilello's petition did not allege any specific provisions of the Medicare and Medicaid rules and regulations that were violated, he now directs us to several violations that were implicated by his petition. Pursuant to Medicare/Medicaid rules and regulations, a hospital, like UT Southwestern, "must be in compliance with applicable Federal laws related to the health and safety of patients" to receive benefits from the program. *See* 42 C.F.R. § 482.11. The hospital's governing body must ensure the medial staff is accountable to the governing body for the quality of care provided to patients. 42 C.F.R. § 482.12(a). If a resident participates in surgical procedures, a teaching physician must be present during all critical portions of the procedure. 42 C.F.R. § 415.172. If emergency services are provided, the hospital must meet emergency needs in accordance with acceptable standards. 42 C.F.R. § 482.55. Emergency services must be organized under the direction of a qualified member of the medial staff and the policies and procedures governing medical care provided in the emergency service or department must be established by the medical staff. 42 C.F.R. § 482.55. Emergency services must also be supervised by a qualified member of the medical staff. 42 C.F.R. § 482.55. Furthermore, Medicare and Medicare rules and regulations allow payment according to a physician fee schedule for a procedure in which a resident participates only if a physician is present during the key portion of the service or procedure for which payment is sought. 42 C.F.R.

§ 415.172(a). Fraudulent billing for Medicare and Medicaid services constitutes a criminal offense. *See* 42 U.S.C. 1320a-7b(a).

According to UT Southwestern, Rege could not "regulate under" or "enforce" Medicare or Medicaid rules and regulations because he could not himself write the rules or impose fines or criminal liability under those rules and regulations. However, unlike the DWI statute at issue in *Needham,* the statutes at issue here specifically charge UT Southwestern and its physicians with implementing the laws at the hospital level. While Rege may not have had the power to write the rules or assess fines or other criminal sanctions for a violation of the rules, he had both the power and the duty to enforce those rules and regulations at UT Southwestern. Rege specifically testified that he had the ability to decide whether UT Southwestern could bill Medicare or Medicaid or not. There was also evidence that he could immediately stop any procedure in violation of the applicable rules and regulations and discipline an offending physician. Rege conceded at the hearing that he enforced the laws insofar as he set policies and procedures for Medicare and Medicaid compliance. He also conceded that he had the ability to "regulate, enforce, and investigate any irregular billings." Rege also testified that he had the authority to enforce faculty supervision on residents.

Further, at the hearing on the plea to the jurisdiction, evidence was presented that UT Southwestern had created a formal billing compliance program to ensure it followed Medicare and Medicaid rules and regulations. The plan established a billing compliance office, appointed a billing compliance advisory committee, and designated a billing compliance officer. The plan required the committee to, among other things, undertake a process

for faculty to report non-compliance and for such reports to be fully and independently reviewed. It also required the committee to formulate a corrective action plan to address any instances of non-compliance. The plan specifically stated that the Clinical Department Chair had the responsibility to ensure the goals of billing compliance were met. It is undisputed Rege was the Clinical Department Chair. Rege thus had the authority, responsibility, and ability to ensure UT Southwestern complied with the applicable Medicare and Medicaid rules and regulations.

Finally, there was evidence that UT Southwestern itself believed that the Whistleblower Act would protect certain internal reporting. Specifically, UT Southwestern's billing compliance plan specifically stated that all reports, through appropriate mechanisms, of possible instances of non-compliance would be forwarded to the Billing Compliance Office and "that employees who report, in good faith, possible compliance problems shall be protected from retaliation or harassment, as established by law." *Cf. Okoli*, 371 S.W.3d at 811 (fact issue as to good faith belief where employee told to report violations first to his supervisor where there was evidence employer authorized to investigate violations of law). This is some evidence of the reasonableness of Gentilello's belief. In light of the Medicare rules and regulations as well UT Southwestern's implementation of those rules and regulations, we conclude a fact issue exists on whether Gentilello had a good faith belief that he reported to an appropriate law enforcement authority. Therefore, the trial court properly denied UT Southwestern's plea to the jurisdiction. We affirm the trial court's order.