NO. 07-11-00176-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 23, 2013

———————————————

SYED AHMED, M.D., APPELLANT

v.

TEXAS TECH UNIVERSITY HEALTH SCIENCE CENTER
SCHOOL OF MEDICINE AT AMARILLO
AND DENNIS B. DOVE, M.D., APPELLEES

———————————————

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-553,448; HONORABLE WILLIAM C. SOWDER, JUDGE

———————————————

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Syed Ahmed, M.D., sued Texas Tech University Health Science Center School of Medicine at Amarillo and Dennis B. Dove, M.D., for alleged wrongs arising from Ahmed's employment with Texas Tech. The trial court sustained the plea to the jurisdiction of Texas Tech and Dove and granted the motion of Texas Tech to dismiss

Dove under Civil Practice and Remedies Code § 101.106(e).[1] Ahmed now appeals. For the reasons that follow, we will affirm.

Background

Ahmed's pleading alleged the following facts. Ahmed was an assistant professor of surgery at Texas Tech when his supervisor Dove and other school of medicine administrators hired Dr. Rakhshanda Rahman, also a surgeon. To admit patients and perform surgery, Rahman required privileges at two Amarillo hospitals, Northwest Texas Hospital and Baptist Saint Anthony's Hospital (BSA); Ahmed had for several years been on staff of both hospitals. Ahmed believed Rahman did not possess all the surgical credentials she claimed and believed her surgical training in Pakistan did not qualify her for a "full license" to practice in Texas. Ahmed reported his concerns to Dove and the credentialing committees at Northwest Texas and BSA.

Ahmed's pleading further alleged that BSA refused Rahman permission to conduct surgery and see patients, but that based on the "heavy influence" of Texas Tech, Rahman received privileges to perform breast surgery at Northwest Texas.

Ahmed plead that Dove was "very upset" that Ahmed had reported his concerns about Rahman, particularly to BSA. In January 2009, Dove gave Ahmed a negative performance evaluation and began exerting pressure on him to resign, despite Ahmed's recent pay raise and bonus.

---

[1] Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (West 2011).

2

During March 2009, Ahmed filed an internal grievance against Dove. Thereafter, Ahmed was removed from his teaching assignments in the school of medicine. Ahmed made multiple appeals to the regional dean as well as to the dean of the medical school but the school policy of non-retaliation was not implemented. He was excluded from faculty activities and his application for evaluation went unattended.

Ahmed ultimately resigned his position at Texas Tech and filed suit. There he asserted claims Texas Tech violated the Texas Whistleblower Act, breached his employment contract, violated provisions of the Texas Constitution, and committed fraud, negligent misrepresentation and defamation. He additionally sought declaratory relief. Ahmed also alleged Dove had defamed him. Texas Tech and Dove filed a plea to the jurisdiction based on sovereign immunity and Texas Tech sought the dismissal of Dove from the suit under Civil Practice and Remedies Code § 101.106(e). The trial court granted the plea to the jurisdiction and the motion to dismiss, denying a motion by Ahmed for continuance of the hearing and for discovery. This appeal followed.

Analysis

Issues

Through five issues Ahmed asserts the trial court erred by sustaining the plea to the jurisdiction and dismissing his Whistleblower Act violation claim, his breach of contract claim, and his due course of law claim under the Texas Constitution, granting the motion to dismiss Dove, and denying his motion for continuance and discovery.

Sovereign Immunity

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consolidated Independent School District v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008); *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006). Sovereign and governmental immunities encompass two distinct principles, immunity from suit and immunity from liability. *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex. 2004); *Channelview Indep. Sch. Dist. v. A.R.C.I., Ltd.,* 199 S.W.3d 556, 559 (Tex.App.--Houston [1st Dist.] 2006, no pet.). Immunity from liability is an affirmative defense subject to waiver, but immunity from suit deprives a court of subject-matter jurisdiction. *Miranda,* 133 S.W.3d at 224. Immunity from suit is thus properly asserted in a plea to the jurisdiction. *Reyes v. City of Laredo,* 335 S.W.3d 605, 606 (Tex. 2010) (per curiam) (quoting *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 639 (Tex. 1999)).

The burden is on the plaintiff to allege facts affirmatively establishing the trial court's jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). Whether a pleading alleges facts sufficient to demonstrate the trial court's subject matter jurisdiction is a question of law that is reviewed *de novo. Miranda,* 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* In reviewing the granting of a plea to the jurisdiction, we liberally construe the pleadings in favor of the plaintiff and take the facts pled as true. *Westbrook v. Penley,* 231 S.W.3d 389, 405 (Tex. 2007) (when plea to the jurisdiction

4

challenges pleadings, and not existence of jurisdictional facts, court construes pleadings in favor of pleader taking as true facts alleged to determine existence *vel non* of jurisdiction (citing *Miranda,* 133 S.W.3d at 226)); *see City of Elsa v. Gonzalez,* 325 S.W.3d 622, 625 (Tex. 2010) (per curiam) ("When considering the pleadings, we construe them liberally in favor of the plaintiffs, look to the pleader's intent, and determine if the pleader has alleged facts affirmatively demonstrating the court's jurisdiction").

Whistleblower Claim

The Texas Whistleblower Act prohibits a governmental entity from terminating or taking any adverse employment action against an employee who in good faith reports to an appropriate law enforcement authority a violation of law by the entity or a public employee. *Montgomery County v. Park,* 246 S.W.3d 610, 612 (Tex. 2007) (citing Tex. Gov't Code Ann. §§ 554.001-554.010). The act contains a provision waiving sovereign immunity to the extent of liability for authorized relief.[2] Tex. Gov't Code Ann. § 554.0035 (West 2012); *State v. Lueck,* 290 S.W.3d 876, 881-82 (Tex. 2009). To demonstrate the trial court's jurisdiction over an asserted Whistleblower Act claim, a plaintiff must actually allege a violation of the act and not merely reference it. *Lueck,* 290 S.W.3d at 882 ("Mere reference to the . . . Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court")

---

[2] *See* Tex. Gov't Code Ann. § 554.0035 (West 2012) ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter").

(quoting *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex. 2001)). Thus, the elements of a Whistleblower Act claim "must be included within the pleadings so that the court can determine whether they sufficiently allege a violation under the Act and fall within" the waiver of immunity from suit provided by § 554.0035. *Lueck,* 290 S.W.3d at 884. For example, under *Lueck,* whether an employee made a "good faith report of a violation of law to an appropriate law enforcement authority is a jurisdictional question." *Tex. Dep't of Health and Human Servs. v. Okoli,* 295 S.W.3d 667, 668 (Tex. 2009).

A plaintiff establishes a claim under the Whistleblower Act by showing: (1) he is a public employee; (2) he acted in good faith in making a report; (3) the report involved a violation of law by an agency or employee; (4) the report was made to an appropriate law enforcement authority; and (5) he suffered retaliation as a result of making the report. Tex. Gov't Code Ann. § 554.002 (West 2012); *Phelan v. Tex. Tech Univ.,* 07-07-0171-CV, 2008 Tex. App. Lexis 500, at *8 (Tex.App.--Amarillo Jan. 23, 2008, pet. denied) (mem. op.).

*Appropriate Law Enforcement Authority*

Under the Whistleblower Act, an appropriate law enforcement authority is an entity that is "part of a state or local governmental entity or of the federal government that the employee in good-faith believes is authorized to (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." Tex. Gov't Code Ann. § 554.002(b) (West 2012); *see Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 319 (Tex. 2002) (holding "general authority" to

6

regulate, enforce, investigate, or prosecute is not enough). Under § 554.002(b) "good faith" means the employee subjectively believed the governmental entity was authorized to regulate under or enforce the law allegedly violated in the report or investigate or prosecute a violation of the criminal law, and the employee's belief was objectively reasonable in light of the employee's training and experience. *Needham,* 82 S.W.3d at 320-21. In other words, the plaintiff must establish "he honestly believed he was reporting the perceived violation to an authority within an entity which could regulate under or enforce the law in issue or investigate or prosecute a criminal offense and, moreover, that this belief was objectively reasonable." *Duvall v. Tex. Dep't of Human Servs.,* 82 S.W.3d 474, 478 (Tex.App.--Austin, 2002, no pet.).

Ahmed's pleadings asserted he reported violations of the law to his supervisor Dove and to the credentialing committees of BSA and Northwest Texas. Texas Tech's plea to the jurisdiction contends Ahmed could not have had an objectively reasonable belief that Dove or either credentialing committee was an appropriate law enforcement authority under the act. We agree.

As to the hospital credentialing committees, Texas Tech points out, and Ahmed does not dispute, that both BSA and Northwest Texas hospitals are privately-owned entities. Texas Tech contends it follows that the hospitals' credentialing committees cannot be "part of a state or local governmental entity or of the federal government," as required by the definition of appropriate law enforcement authority. Tex. Gov't Code Ann. § 554.002(b) (West 2012). In response, Ahmed points to § 160.003 of the occupations code, which requires physicians and medical peer review committees to report "relevant information to the [Texas Medical Board] relating to the acts of a

7

physician in this state if, in the opinion of the person or committee, the physician poses a continuing threat to the public welfare through the practice of medicine." Tex. Occ. Code Ann. § 160.003(2)(a),(b) and § 151.002(1) (West 2012) (defining "board" as the Texas Medical Board). Ahmed contends that by virtue of the occupations code requirements, the credentialing committees function "as an arm of the Texas Medical Board." We cannot agree. The reporting requirement set out in § 160.003 applies not only to medical peer review committees and physicians licensed or lawfully practicing in Texas but to other broad categories of medical practitioners, including physician assistants licensed or lawfully practicing in our state, and medical students. If Ahmed's theory were correct, all those individuals would be considered "part of" the Texas Medical Board for purposes of the authorized law enforcement authority definition. Neither the plain language of the Whistleblower Act nor any other indicator of legislative intent we have seen suggests to us the Legislature intended that individuals, or committees, having merely a duty of reporting to a governmental entity are "part of" the entity.

The School of Medicine, unlike the hospital credentialing committees, is a state governmental entity under the Whistleblower Act,[3] so it would be possible Ahmed's report to his supervisor Dove was a report to an appropriate law enforcement authority. With regard to his report to Dove, Ahmed cites us to the Dallas Court of Appeals' opinion in *Univ. of Tex. Southwestern Med. Ctr. v. Gentilello,* 317 S.W.3d 865 (Tex.App.--Dallas 2010, pet. granted), where the court concluded a fact issue existed as

---

[3] *See* Tex. Gov't Code Ann. § 554.001(5)(A) (West 2012) (defining state governmental entity to include an institution of higher education as defined by section 61.003, Education Code).

to whether a professor of medicine at the University of Texas Southwestern Medical Center had a good faith belief his report to a superior of unsupervised patient treatment by medical residents at Parkland Hospital was a report to a law enforcement agency. *Id.* at 871. The professor alleged violations of Medicare and Medicaid statutes. The court observed that the laws in question placed on the medical school responsibility for their implementation at the hospital level. *Id.* at 870. And while the superior could not write the rules or assess criminal punishment for a violation, he had the power and duty of enforcement at the medical school. *Id.*

Ahmed's pleadings and briefing speak generally of his report of violations of the "laws of Texas regarding the practice of medicine," "Texas law regarding licensure qualifications and permission of doctors to practice medicine," and "credentialing laws under the Texas Medical Board's rules and laws." We are not cited to authority like that referred to in *Gentilello*, where, as noted, the Medicare and Medicaid statutes placed on UT Southwestern the responsibility for their implementation at the hospital level. *Gentilello,* 317 S.W.3d at 870. The occupation code provisions cited here place on physicians like Dove only the obligation to report information to the Texas Medical Board.[4] That reporting obligation is shared by broad categories of health care practitioners. Tex. Occ. Code Ann. § 160.003(a) (West 2012).

"[T]he Whistleblower Act's limited definition of a law enforcement authority does not include an entity whose power is not shown to extend beyond its ability to comply with a law by acting or refusing to act or by preventing a violation of law by acting or

_____

[4] Those who make the required reports to the medical board also have protection from retaliation. Tex. Occ. Code Ann. § 160.012 (West 2012) (prohibiting discipline or discrimination against person reporting to board).

refusing to act. *City of Elsa,* 325 S.W.3d at 628. Nor does it include an entity possessing authority merely to take remedial action. *See Duvall,* 82 S.W.3d at 481-82 (drawing distinction between authority to regulate under or enforce the law and authority to take remedial action).

Nothing in the present matter indicates the existence of a legal relationship empowering Dove to regulate, enforce, investigate, or prosecute a complaint for the Texas Medical Board. Rather, under § 160.003, Ahmed made a report to an individual and entities who, like him, were required to report information to the Texas Medical Board. *See Needam,* 82 S.W.3d at 319, 320 (noting "the particular law the public employee reported violated is critical to the determination" whether the one to whom report is made is included within definition of appropriate law enforcement authority).

Ahmed's pleadings do not state facts demonstrating that at the time of the report he possessed a good-faith, reasonable belief that by reporting to Dove and the committees he was reporting to law enforcement authorities. *See City of Elsa,* 325 S.W.3d at 628 (citing *Needham,* 82 S.W.3d at 320-21 (holding that the Whistleblower Act applies if the employee had a good-faith, reasonable belief that the report was made to an appropriate law enforcement authority)). The good-faith analysis is not limited simply to what Ahmed subjectively believed about the authority of Dove and the credentialing committees to regulate, enforce, investigate, or prosecute. Rather, it includes an objective prong that considers whether a reasonably prudent person in the same circumstances could have believed as Ahmed's pleadings say he believed. *Leach v. Tex. Tech Univ.,* 335 S.W.3d 386, 397 (Tex.App.--Amarillo 2011, pet. denied).

Ahmed completed surgical training at Albert Einstein College of Medicine and New York Medical College. He also holds a master of business administration degree in healthcare from the University of Tennessee. He served as an assistant professor of medicine for Texas Tech. He is a board-certified surgeon with "full and unrestricted operating and admitting privileges" at BSA and Northwest Texas hospitals. The staff at Northwest Texas nominated him as physician of the year in 2009. In short, Ahmed's pleadings do not show that a reasonable person invested with his training and experience would have believed that reporting to his supervising physician that another physician was misrepresenting her credentials and licensing status and practicing outside her credentials was, for purposes of the Whistleblower Act, the equivalent of reporting those violations of law to the Texas Medical Board. Ahmed has not plead he reported the complained-of conduct involving Rahman to an appropriate law enforcement authority as required by § 554.002. Tex. Gov't Code Ann. § 554.002 (West 2012).

Because Ahmed's Whistleblower Act claim does not include an allegation he made a report to an appropriate law enforcement authority, the trial court did not err by finding no waiver of immunity and dismissing the claim. Ahmed's first issue is overruled.

Breach of Contract Claim

*Express Waiver*

The State waives immunity from liability on its contracts with a private party as if it were a private party. *Gen. Servs. Comm=n v. Little-Tex Insulation Co.,* 39 S.W.3d

11

591, 594 (Tex. 2001). But waiver of immunity from suit for a claimed breach of contract requires a clear and unambiguous expression by the Legislature. *Travis County v. Pelzel & Assocs.,* 77 S.W.3d 246, 248 (Tex. 2002); Tex. Gov't Code Ann. § 311.034 (West Supp. 2012) (providing "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language").

Ahmed asserts Texas Tech expressly waived immunity from suit by policies authorized as legislative acts. His assertion is founded on Education Code § 109.001(c), which vests the governance of the Texas Tech University System in its board of regents, and permits the board to delegate by rule a power or duty of the board to an officer, employee or other agent. Tex. Educ. Code Ann. § 109.001(c) (West 2002). In *Leach*, we expressed our disagreement with a contention that by enacting § 109.991(c) the Legislature unambiguously permitted Texas Tech University to waive its immunity. 335 S.W.3d at 394-95. That holding is dispositive of Ahmed's contention in this case.

Even were we to find legislative authorization for a waiver of immunity from suit in the education code provision Ahmed cites, we could not agree that the policies on which he relies[5] have the effect of waiving immunity. *See Univ. of Tex. at El Paso v. Herrera,* 322 S.W.3d 192, 201 (Tex. 2010) (finding no waiver of immunity by state university through its personnel handbook).

---

[5] Ahmed cites a rule adopted by Texas Tech's regents providing for the establishment of grievance procedures for students, faculty and staff. He then points to Texas Tech's Health Sciences Centers' operating policy and procedure, which includes a faculty grievance procedure. Within that procedure is a provision stating, "Resignation from or filing a legal suit against the institution before initiation of a grievance or during the process shall preclude initiation of [sic] continuation of the grievance process."

Ahmed next argues Texas Tech contracted away its immunity through language in his employment contract. He refers to two contractual provisions: first, a clause providing the contract is governed by the laws of the State of Texas and fixing venue of any dispute in Lubbock County; and second, a paragraph entitled "waiver" providing, "The failure of either party to enforce any provision of this Agreement . . . shall not be construed as a waiver or limitation on that party's right to subsequently enforce and compel compliance with every provision of this Agreement." Without supporting authority, Ahmed concludes this language constitutes "a clear and unambiguous waiver of immunity."

This argument also has no merit. It first assumes Texas Tech has been empowered by the Legislature to waive its immunity. We have already concluded no such authority exists. Moreover, the contractual language on which Ahmed relies is not a clear and unambiguous waiver of immunity. See *Texas Natural Res. Conservation Comm=n v. IT-Davy,* 74 S.W.3d 849, 851 (Tex. 2002) (finding no waiver of immunity from language in contract's remedies section stating claims or disputes would be decided by arbitration or in court).

Ahmed has not plead an effective express waiver by Texas Tech of its immunity from suit on Ahmed's employment contract.

*Equitable Waiver-by-Conduct*

Ahmed next asserts that Texas Tech waived immunity from suit by engaging in inequitable conduct. For this assertion he relies on the decision in *Texas Southern University v. State Street Bank & Trust Co.,* 212 S.W.3d 893 (Tex.App.--Houston [1st

13

Dist.] 2007, pet. denied), in which the court affirmed the trial court's denial of a plea to jurisdiction based on "extraordinary factual circumstances" set forth in the pleadings and by the university's conduct that "lured" a contractor into a contract. *Id.* at 900, 908. This court also has stated its disagreement with the conclusion of the court in *State Street* finding a potential waiver of immunity from suit through inequitable conduct. *See Leach,* 335 S.W.3d at 401. Particularly in view of the rejection of a waiver-by-conduct exception to the immunity of governmental entities from breach-of-contract suits in the later case of *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 414 (Tex. 2011), we will not reconsider the issue here.[6]

Finding Ahmed has not plead a waiver of Texas Tech's immunity from suit for his breach-of-contract claim, we overrule Ahmed's second issue.

Declaration of Due Process Violation

Ahmed's third issue brings under analysis his request for declaratory relief under the Uniform Declaratory Judgments Act (UDJA)[7] and the immunity from suit of Texas Tech. Under this issue, Ahmed asserts the trial court erred in dismissing his request for a declaration that Texas Tech "violated the due course of law clause of the Texas Constitution when it retaliated against [Ahmed] and caused him to resign due to hostility which constituted constructive termination and was wrongful." Ahmed explains the viability of this request in light of an immunity claim. "Appellant does not seek any sort

---

[6] *See also City of Deer Park v. Ibarra,* No. 01-10-0490-CV, 2011 Tex. App. Lexis 6899, at *18 (Tex.App.--Houston [1st Dist.] Aug. 25, 2011) (mem. op.) (explaining *State Street* and distinguishing its facts from the case there at hand).

[7] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

14

of contractual relief, such as contract damages, or specific performance under this claim. Indeed, even if Appellant's contract claims were not viable, he would still be forced to seek a declaratory judgment to restore his reputation."

Nevertheless, Texas law provides "sovereign immunity bars UDJA actions against the state and its political subdivisions absent a legislative waiver."[8] *Tex. Dep't of Transp. v. Sefzik,* 355 S.W.3d 618, 620 (Tex. 2011) (per curiam); *Tex. Parks & Wildlife Dep't v. Sawyer Trust,* 354 S.W.3d 384, 388-89 (Tex. 2011) (citing *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (Tex. 1961) (holding absent State's consent sovereign immunity bars trespass to try title suit against State even if brought as action for declaratory judgment under UDJA)). While the governmental entity is immune from such suits absent consent, it is "[v]ery likely" the same claim could be brought against the appropriate state official in his official capacity for nondiscretionary acts unauthorized by law under the *ultra vires* exception to immunity. *Sefzik,* 355 S.W.3d at 621 (citing *City of El Paso v. Heinrich,* 284 S.W.3d 284, 372-73 (Tex. 2009)). "An *ultra vires* suit is one to require a state official to comply with statutory or constitutional provisions." *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 633 (Tex. 2010). Immunity does not bar an *ultra vires* claim for prospective injunctive and declaratory relief against individual governmental officials acting in their official capacities even if a declaration mandates payment of money, *Heinrich,* 284 S.W.3d at 372, although a governmental entity cloaked with sovereign immunity remains immune from suit. *Texas Dept. of Ins. v. Reconveyance Services, Inc.,* 306 S.W.3d 256, 258

---

[8] The UDJA waives immunity when, for example, a party challenges the validity of a statute. *Sefzik,* 355 S.W.3d at 622. This is because the UDJA expressly requires joinder of the governmental entity. *Id.* at n.3 (citing Tex. Civ. Prac. & Rem. Code § 37.006(b)). Ahmed's claim does not challenge the validity of a statute.

(Tex. 2010). To come within the *ultra vires* exception to immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich,* 284 S.W.3d at 372.

Ahmed's pleadings contain a paragraph referring to *ultra vires* acts. Although it is not clear he asserts an *ultra vires* action seeking declaratory relief against an individual or individuals in their official capacity, we will read his pleadings as asserting such a claim. We nonetheless conclude the trial court did not err by dismissing Ahmed's suit for a declaratory judgment. Ahmed's suit complains that Dove reported an unfavorable evaluation, opposed Ahmed's appeal of the evaluation, cancelled his teaching assignments, failed to include Ahmed in faculty retreats, meetings and dinners, failed to timely perform evaluations and pressured Ahmed to resign his position. He alleges that the actions against him taken by Dove and other School of Medicine administrators were wrongful and damaging to him. But his suit does not allege the school administrators were acting without legal authority when they took the actions, or that they failed to perform a purely ministerial act. The "real substance"[9] of Ahmed's claim for declaratory relief complains of Dove's exercise of his discretion, not "nondiscretionary acts unauthorized by law." *Sefzik,* 355 S.W.3d at 621. He has not plead a claim under the *ultra vires* exception to immunity. Ahmed's third issue is overruled.

---

[9] "The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit." *Sawyer Trust,* 354 S.W.3d at 389 (citation omitted).

16

Election of Remedies under Civil Practice & Remedies Code § 101.106(e)

In his fourth issue, Ahmed contends the trial court erred by dismissing claims against Dove under Civil Practice and Remedies Code § 101.106(e).

The Texas Tort Claims Act provides in relevant part, "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (West 2011).

Ahmed alleged Dove and Texas Tech defamed him by making "slanderous and libelous statements against [him] causing his reputation and income potential damages." He further contended this conduct was intentional and "designed to injure [his] reputation as a doctor, injure him in his occupation, and expose him to financial harm."

The limited waiver of immunity of "this chapter," the Tort Claims Act, does not include a suit for defamation or intentional tortious conduct. But the scope of the act's waiver of immunity does not determine the applicability of § 101.106(e). "Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." *Mission Consolidated,* 253 S.W.3d at 659. On Texas Tech's filing of a motion to dismiss Dove, the trial court properly dismissed Ahmed's tort claims against him pursuant to § 101.106(e).

17

On appeal, Ahmed argues that he also alleged claims under the Texas Constitution for taking his property without adequate compensation, article I, section 17,[10] and denial of due course of law, article I, section 19.[11] As to these theories, he points to the holding of *Mission Consolidated* that claims against the government brought pursuant to waivers of immunity apart from the Tort Claims Act are not "filed under" the Tort Claims Act and are thus not subject to § 101.106(e). 253 S.W.3d at 659. Ahmed's argument accurately characterizes the holding of *Mission Consolidated* on that point, but we fail to see how the holding bears on the trial court's dismissal, pursuant to Texas Tech's motion, of tort claims asserted against both Texas Tech and its employee Dove. Ahmed's fourth issue is overruled.

Motion for Continuance

By his fifth issue, Ahmed asserts the trial court abused its discretion by denying his motion for continuance and discovery. Ahmed filed suit on August 13, 2010. Texas Tech and Dove answered on August 26. On the same date, Texas Tech and Dove filed their pleas to the jurisdiction and Texas Tech its motion to dismiss the claims against Dove. These matters originally were scheduled for hearing on October 22, 2010. Unaware of the scheduled hearing, on October 20, Ahmed served Texas Tech with interrogatories, a request for production, and requests for disclosure. By agreement,

---

[10] "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." Tex. Const. art. I, § 17(a).

[11] "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19.

18

the hearing was rescheduled for November 12, but Texas Tech and Dove verbally refused to make discovery responses "unless so ordered by the Court."[12]

Ahmed filed an unverified motion for continuance on October 28. In the motion he argued his written discovery requests were served before he received notice of the hearing and responses were not due until after the hearing date. And he "ha[d] been advised" the court intended to quash a notice of Dove's deposition."[13] Ahmed requested thirty days to obtain responses to outstanding written discovery, and depose Dove and an individual designated by Texas Tech. Ahmed argued the discovery was required for his claims of retaliatory conduct and breach of contract. "Otherwise," Ahmed continued, he lacked the "ability to present the necessary evidence . . . related to the whistle-blower elements or Defendant's conduct that waives immunity, such as individuals' communications, intentions, and knowledge related to the contract, its termination, and their conduct."

The court signed an order November 3, 2010, setting a hearing on Ahmed's motion for continuance and the dilatory pleas of Texas Tech and Dove for December 3. According to the order, which the attorneys for the parties signed as "agreed," discovery was stayed until the hearing date. An order signed November 15, also reciting an agreed stay of discovery, continued the hearing until December 10. The trial court implicitly overruled the requested continuance by signing its March 2011 order granting the plea to the jurisdiction and motion to dismiss.

---

[12] The record contains no motions or orders concerning discovery.

[13] Apparently Ahmed served a notice of Dove's deposition although it is not included in the record.

19

We review the denial of a motion for continuance for a clear abuse of discretion. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex. 2004). A motion for continuance shall not be granted except for sufficient cause supported by affidavit, consent of the parties, or by operation of law. Tex. R. Civ. P. 251. We presume the trial court did not abuse its discretion if a motion for continuance is not verified. *See Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986) (stating proposition and citing *Garcia v. Texas Employers' Ins. Assn.*, 622 S.W.2d 626, 630 (Tex.App.--Amarillo 1981, writ ref'd n.r.e)). When deciding whether a trial court abused its discretion by denying a motion for continuance seeking additional time to conduct discovery the supreme court has applied a nonexclusive list of factors including the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence in obtaining the requested discovery. *Joe,* 145 S.W.3d at 161 (summary judgment context).

Even were we not confronted with the presumption that the trial court did not err, we would conclude the court did not abuse its discretion in denying Ahmed's motion for continuance. Given the purposes for which Ahmed sought discovery, our conclusions regarding the viability under the controlling law of his Whistleblower Act and breach of contract claims, as discussed in our disposition of his appellate issues regarding those claims, lead also to the conclusion the discovery Ahmed sought would not have raised a fact issue postponing the dismissal of those claims. *See Joe*, 145 S.W.3d at 162 (similar analysis); *Zumwalt v. City of San Antonio,* No. 03-11-00301-CV, 2012 Tex. App. Lexis 4003, at *28-30 (Tex.App.--Austin May 12, 2012, no pet.) (mem. op.) (finding no error by trial court in denying motion for continuance to conduct additional discovery

when disposition of plea to the jurisdiction involved only question of law). No clear abuse of discretion in denial of the continuance is shown.

Incurable by Amendment

A plaintiff is generally entitled to a reasonable opportunity to amend his petition Αunless the pleadings affirmatively negate the existence of jurisdiction.@ *Tex. A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839 (Tex. 2007). Ahmed supplemented his petition twice after the defendants filed their pleas to the jurisdiction and motion to dismiss. And Ahmed has requested an opportunity to further amend his petition if we conclude it fails to allege sufficient jurisdictional facts. But here, as in *Koseoglu,* remanding the case for a chance to amend would serve no legitimate purpose. As we have noted, the claims whose dismissal Ahmed challenges on appeal will not evade immunity's bar simply because more facts are alleged. *See id.,* 233 S.W.3d at 840 (denying opportunity to amend breach of contract claim where alleging more facts supporting waiver of immunity by conduct theory would add nothing).

## Conclusion

Having overruled each of Ahmed's issues on appeal and finding his pleading incurable by amendment, we affirm the judgment of the trial court.

James T. Campbell
Justice

21